JOHN BURHANS

v.

JOHN R. BEAM et al.

While complainant was a minor, a partition sale of lands, in which he owned an undivided one-third, was ordered by the orphans court. At the sale the commissioners, without direction from the court, announced that they would accept seventy per cent. of the purchase-money in first mortgages, and did so, but reported the sale to the court as if it had been for cash only. Several persons (the defendants) agreed that Beam should buy part of the land for them at the sale, which he accordingly did, and he gave several mortgages for the seventy per cent., in his own name, to the commissioners, who assigned part of them to the complainant's guardian on account of his interest in the lands. Beam also executed a declaration of trust, stating that he held the title in trust for himself and the defendants, and they paid their respective portions of the thirty per cent. required at the time of sale, and the interest subsequently accruing on the mortgages. The guardian assigned the mortgages to the complainant when he attained his majority. On foreclosure, the premises did not produce enough to satisfy the mortgages.—*Held,* that the defendants, who authorized Beam to purchase for them, were not personally liable for the deficiency.

On bill to foreclose, and prayer for deficiency.

*Mr. E. Stevenson,* for complainant.

*Mr. J. W. Griggs,* for defendants.

BIRD, V. C.

This bill was filed by John Burhans to foreclose a mortgage given by John R. Beam to James Van Blarcom, Garret I. Blauvelt and Peter Doremus, commissioners, who had been ordered to sell certain real estate in which the complainant had an undivided one-third interest. This mortgage was given to secure seventy per cent. of the purchase-money. It bears date August 11th, 1873. By an assignment dated November 1st, 1873, acknowledged November 7th, it was transferred to Augusta

Burhans, the mother and then the guardian of complainant. August 27th, 1878, after the complainant had arrived at age, he accepted an assignment of said mortgage from his mother and former guardian.

Whilst the defendant, John R. Beam, alone executed the bond, and mortgage, the bill prays for a decree for deficiency against not him only, but John J. Brown, John H. Hinsdale, Libbie Benner, and Margaret Hoxey, as executrix of Thomas D. Hoxey, deceased. Whether they are liable with said Beam or not, is the only question submitted.

In March, 1872, the complainant and others were seized in fee of six tracts of land located in Passaic county. The orphans court appointed commissioners to divide said lands. Four tracts were divided by the commissioners, and two were laid out in lots and sold. These lots were advertised for sale June 3d, 1873. The commissioners, without any authority from the court, gave notice that they would require thirty per cent. of the purchase-money paid in cash, and that the balance could be secured by the bond of the purchaser and first mortgage on the premises. John H. Hinsdale, one of the defendants, was auctioneer and struck off to himself several of these lots. Others were struck off to Thomas D. Hoxey; others to John R. Beam and others to different buyers.

A question arose at this stage whether Hinsdale was acting for himself or for others, and for that reason, or some other not satisfactorily disclosed, the sale of the balance of the lots was adjourned until July 1st, 1873, when they were all sold. The insistment on the part of the complainant is, and not denied by the defendants, that the defendants bid directly or indirectly at one or both of these sales, and that one or more lots were struck off to them; also, that at some time before the confirmation of the sale, but at what time it is not established, an arrangement was entered into by the defendants that their several bids should all be considered as the bids of John R. Beam. To this the commissioners assented, and reported the sales of these several lots to the court, and the court confirmed the sales as made to him. Afterwards, the commissioners executed and delivered

Burhans *v.* Beam.

deeds to John R. Beam for the several parcels which had been so reported as sold to him. The other defendants contributed their proportion of the thirty per cent. of the purchase-money. Beam gave his bond and mortgage on the premises for the balance of the purchase-money. The bond was payable in five years.

By a declaration bearing date May 11th, 1873, acknowledged and recorded May 18th, 1874, Beam declared that he held these lands in trust to sell for the other defendants. Each of the defendants contributed his proportion of the interest on the bond, as it fell due, so long as any was paid.

The commissioners treated the mortgage in their hands as cash, no mention being made of it in their proceedings in the orphans court.

In November, 1873, after the deed was made and the mortgage accepted by the commissioners, Charles Burhans and Augusta, the guardian, called on Mr. Van Blarcom, as one of the commissioners, to make settlement with him. When Mr. Van Blarcom produced the bond and mortgage and offered them as so much cash, it was at first objected that they were not cash, to which Mr. Van Blarcom replied that they were as good as cash, or words equivalent thereto, and that he had done the business the same as he would have done it for himself. The guardian then accepted the bond and mortgage.

At the time of this transaction no one dreamed of any loss, but since the ward has arrived at age, and the bond fallen due, serious loss is manifest. This being so, the complainant contends that since the defendants all bid, and the lots were severally struck off to them, and they made an arrangement with Beam, one of their number, that they should have an equal interest with him in the proceeds of future sales of these lands to be made by him, that they were thereby equally bound with him for any deficiency, although neither of them signed the conditions of sale.

Not being in any sense bound by the strict rules of law, are they by rules of equity, for any deficiency? The complainant claims that having, by some arrangement with Beam, which is

Burhans *v.* Beam.

evidenced by the declaration of trust, become interested in the land, they stand in the position of purchasers and are liable as such.

The complainant, as assignee, stands in no better position than the commissioners. He took all their rights, no more. Would the commissioners have prevailed had they come in with this prayer? I think not. I cannot perceive the slightest ground for the charge of counsel that a fraud was committed in the transaction. Nor do I find any proof that there occurred such a mistake as is the foundation of relief in this court.

Consider that the commissioners and mortgagees who consented that a number of these lots should be struck off to defendants, other than Beam, should afterwards wholly release them, not even requiring them to sign the conditions of sale, and formally report the sale to the court and ask for its confirmation in the name of Beam alone, and as formally make the deed to him; and how could it be said that the commissioners could ask anything at the hands of this court, either on the ground of fraud or mistake as against the defendants whom they consented should not be parties to the record in partition or to the mortgage. I think, as the proof stands, the court could, and ought not to allow the commissioners to establish anything outside of the record which they made. If I am right in this, the complainant taking under them is also concluded. *Conover* v. *Van Mater, 3 C. E. Gr. 481; Cornish* v. *Bryan, 2 Stock. 146; Bush* v. *Cushman, 12 C. E. Gr. 131.*

I think from these cases it may safely be inferred that no new rights arise, nor are any new liabilities created, by an assignment of the bond and mortgage.

Again, great stress was laid on the assertion that these commissioners acting in the capacity of trustees and dealing with these lands as such, they participated in the fraud with the defendants in the scheme which results in so much injury to the complainant. The complete answer to this is that the guardian of the complainant was under no obligations to accept either worthless or depreciated securities from the commissioners. Nor was the ward obliged to accept of any such securities from his guar-

Burhans v. Beam.

dian. In each case cash could have been insisted on. The commissioners could not have escaped responding according to the very terms of the record, which, I understand, shows a cash sale.

And again, the complainant urges that on the part of the defendants this was in the nature of a partnership transaction, and that as a consequence all are liable for the acts of either with respect to the partnership property. Giving fullest scope to this general declaration, it is fully met by the reasoning in *Williams v. Gillies, 75 N. Y. 197*: "If the bond was not executed in the name of the firm, nor with the intention that it should be their act, can the vendor claim any rights against the others? I think not. He transferred the bond to Dobbs and received $5,000 in cash and a mortgage upon the premises, and the individual bond of Dobbs, to secure the balance of the purchase-money. This was the security which he bargained for and received, and intended to accept. So far as he gave credit to any one, it was to Dobbs. It is probable, if not presumable, that he knew all the facts. Raynor was his son-in-law and broker who negotiated the sale. I think the case fairly shows that all the parties, including the vendor, intended the transaction to be precisely what it purports on the face of the papers, and that neither of them intended or supposed that any one was liable upon the bond but Dobbs." To the same effect is *Patterson v. Brewster, 4 Edw. Ch. 352*. Nor does the case of *Brooke v. Washington, 8 Gratt. 248*, carry the doctrine any further.

It seems to me that with this last consideration the claim for subrogation is disposed of. There should be a decree for deficiency against John R. Beam only. As to the other defendants the bill should be dismissed, with costs. I will so advise.